UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PROTESTANT MEMORIAL
MEDICAL CENTER, INC.,
d/b/a MEMORIAL HOSPITAL,

Plaintiff,

v.

BARRY S. MARAM, in his official
capacity as the Director of the
Illinois Department of Public Aid,
and THE CENTERS FOR MEDICARE
& MEDICAID SERVICES,

Defendants.                                    No. 5-CV-03-DRH

<u>MEMORANDUM AND ORDER</u>

HERNDON, District Judge:

I.  <u>Introduction</u>

Before the Court are Motions to Dismiss pursuant to **Federal Rules of
Civil Procedure 12(b)(1) and 12(b)(6)** submitted separately by Defendant Centers
for Medicaid and Medicare Services ("CMS") (Doc. 47), Defendant Barry Maram
(Doc. 73), and Intervenor-Defendants Illinois Hospital Assoiacion, Children's
Memorial Hospital, Kenneth Hall Regional Hospital, Touchete Regional Hospital
Association, Mount Sinai Hospital, OSF Healthcare System, and Valley West
Community Hospital (Doc. 67).  Counts I through IV of Plaintiff's Second Amended
Complaint arise out of various provisions of **42 U.S.C. § 1396** and the **Social**

**Security Act**.   Counts V through VIII allege constitutional violations.   Count IX alleges a **42 U.S.C. § 1983** claim, and Count X is a request for a declaratory judgment. (Doc. 39.) The moving parties (collectively, "Defendants") argue both that the Court lacks subject matter jurisdiction in this matter and, in the alternative, that Plaintiff has failed to state a claim upon which relief can be granted.   Plaintiff responds in opposition.  (Docs. 64, 77, 81.)  For the following reasons, the Court grants Defendants' Motions.  (Docs. 47, 67, 73.)

## II.  Background

The Medicaid program is designed to provide medical care to low-income individuals.  **42 U.S.C. § 1395 et seq.**  The program is jointly funded by the federal and state governments, and is administered by the states pursuant to plans developed by individual states.  **42 U.S.C. § 1396a.**  In order to ensure federal funding, states must submit their plans to the Secretary of the Department of Health and Human Services (the "Secretary") for approval.  *Id*.  Then, because the Secretary has delegated the task of approving state plans to Defendant CMS, **42 C.F.R. § 430.14-15**, CMS either approves or disapproves a state's plan.

Frequently, states opt to modify their plans via amendments (State Plan Amendments, or "SPAs").  **42 U.S.C. § 1396(b); *see also Pharm. Research & Mfrs. of Am. v. Thompson*, 313 F.3d 600, 602 (D.C. Cir. 2002)**.   These amendments must also be submitted to the Secretary, and automatically go into effect after ninety days if not disapproved. **42 U.S.C. § 1316(a)(1)**.

2

On February 3, 2004, the Illinois legislature passed legislation amending its state Medicaid plan by imposing a tax on health-care providers.  (Doc. 39, p. 3.)  Defendants state that Illinois hospitals stand to gain $340 million in federal funding as a result of this proposal, and, of this, Plaintiff stands to gain over $540,000.  (Doc. 68, pp. 4-6.)  Plaintiff admits that it will receive a net gain from the SPA.[1]  (Doc. 64, p. 9.)

On February 6, 2004, the Illinois Department of Public Aid ("IDPA") submitted an SPA ("the SPA") to CMS for approval, as required by federal law.  **42 U.S.C. § 1396n(f)**; (Doc. 39, pp. 2-4).  CMS approved the Illinois proposal on December 21, 2004.  (Doc. 39, p. 8.)  The SPA took effect retroactively, running from May 9, 2004 until June 30, 2005.  (Doc. 8, Ex. C.)

In its Complaint, Plaintiff makes several statutory and constitutional allegations.  With regard to its statutory claims, Plaintiff first alleges that the new tax

---

[1] Throughout its Complaint and other pleadings, Plaintiff refers to the relevant document here as the "SPA."  CMS also uses this terminology, as do the Intervenors.  Defendant Maram, however, states that

> [t]he SPA is somewhat of a red herring topic in that in of itself the SPA merely sets forth the relationship between the State and the federal government for the purposes of the State obtaining federal funds.  The SPA is not the vehicle by which the Director assesses taxes and makes provider payments which are the subject of plaintiff's complaint.  The authority for these actions derives from Sections 2 and 12 [**305 ILCS 5/5A-2** and **305 ILCS 5/5A-12** respectively].

For simplicity's sake the Court refers to the relevant document as "SPA."

violates **42 C.F.R. § 433.68(f)**'s "hold-harmless" provision.[2]  Second, Plaintiff alleges

that because the percentage of Medicaid patients a hospital serves factors out of the

relevant SPA equations, the SPA violates provisions in **42 U.S.C. § 1396a** and **42

U.S.C. § 1396b** requiring payments to be based on services provided to Medicaid

patients.  Third, Plaintiff alleges that the SPA violates **42 U.S.C. 1396r**, which

prohibits health-care providers from receiving payments in excess of their Medicaid

costs plus uninsured costs.  Fourth, Plaintiff alleges that because Medicaid usage

factors out of the SPA's equations governing payments, low-utilization Medicaid

hospitals, in some instances, receive more Medicaid funding than high-utilization

Medicaid hospitals, and therefore the SPA violates provisions of **42 U.S.C. § 1396r**,

**42 U.S.C. § 1396a(13)(A)**, and **sections 1902 and 1923 of the Social Security

Act**.  Plaintiff also alleges a substantive due process violation on the ground that the

SPA does not allocate Medicaid payments based on Medicaid usage; a procedural

due process violation on the ground that Defendants failed to "follow and enforce the

requirements set forth in [several] federal regulations and statutes" (Doc. 39, p. 14);

and an equal protection claim based on the fact that "the adjustment program was

---

[2] The relevant language therein indicates that a state may not receive
reduced federal funding if either of the following conditions applies: "(1) The
State . . . provides directly or indirectly for a non-Medicaid payment to those
providers or others paying the tax and the amount of the payment is positively
correlated to either the amount of the tax or to the difference between the
Medicaid payment and the total tax cost[, or] (3) The State . . . provides, directly
or indirectly, for any payment, offset, or waiver that guarantees to hold taxpayers
harmless for all or a portion of the tax." **42 C.F.R. § 433.68(f)**.

created because of, rather than in spite of, its allegedly adverse impact on hospitals like Plaintiff." (Doc. 64, p. 14.) Finally, Plaintiff alleges a "violation of [its] Eleventh Amendment rights" (Doc. 39, p. 16) on the ground that Defendants' "failure to follow the requirements mandated by federal regulations and statutes" constitutes an Eleventh Amendment violation. (Doc. 39, p. 16.)

Plaintiff filed its second-amended ten-count Complaint against Defendants on March 10, 2005. Plaintiff seeks both declaratory and injunctive relief. Counts I through IV assert Plaintiff's statutory claims against both Defendants, while Counts V through VIII assert Plaintiff's constitutional claims, also against both Defendants. Count IX asserts a **42 U.S.C. § 1983** claim, and Count X requests a declaratory judgment.

### III. <u>Analysis</u>

#### A.    Lack of Subject Matter Jurisdiction

When ruling on a motion to dismiss for lack of subject matter jurisdiction under **Federal Rule of Civil Procedure 12(b)(6)**, a court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in plaintiff's favor. *Transit Exp., Inc. v. Ettinger*, **246 F.3d 1018, 1023 (7th Cir. 2001)**. The court must then determine "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, **953 F.2d 1073, 1078 (7th Cir 1992)** (**citing** *Conley v. Gibson,* **355 U.S. 41, 45-46 (1957)**). A motion to dismiss tests

the sufficiency of the complaint, not its merits.  ***Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)**.  A claim may be dismissed only if it is beyond doubt that under no set of facts would a plaintiff's allegations entitle her to relief.  ***Travel All over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996)**.  Nevertheless, plaintiff has the obligation to establish jurisdiction by competent proof.  ***Commodity Trend Serv., Inc. v. Commodity Future Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998)**.

> 1. *Mootness*

Article III of the U.S. Constitution extends a court's jurisdiction only to "live" cases and controversies.  U.S. CONST. art. III, § 2; ***Murphy v. Hunt*, 455 U.S. 478, 481 (1982); *Worldwide Street Preachers' Fellowship v. Peterson*, 388 F.3d 555, 558 (7th Cir. 2004)**.  "'A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" ***Stotts v. Community Unit Sch. Dist. No. 1*, 230 F.3d 989, 990 (7th Cir. 2000) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969))**.  "This requirement extends throughout the pendency of an action, not just at the time a case is filed." ***Board of Educ. v. Steven L.*, 89 F.3d 464,467 (7th Cir. 1996)**.  Mootness, moreover, is a threshold question.  ***Worldwide Street Preachers' Fellowship*, 388 F.3d at 558**.

Here, among other relief, Plaintiff requests (1) an order "declaring that the SPA submitted by IDPA [is] invalid and void;" (2) an order "declaring that CMS'[s] approval of the Illinois SPA [is] invalid and void;" and (3) "[a]n injunction preventing

[Defendant] Barry S. Maram . . . from making payments pursuant to the SPA." (Doc. 39, ¶¶ 37, 40, 43, 46, 51, 53, 57, 60, 66, 70.)  Plaintiff bases its requests on Defendants' alleged statutory and constitutional violations.  Plaintiff additionally asks for attorney's fees and other relief deemed proper by the Court. (Doc. 39.)

As an initial matter, the Court finds that Plaintiff's three primary requests are moot.  First, the effectiveness of the SPA in question terminated on July 1, 2005.  Thereafter, the SPA ceased to be valid. An order by the Court declaring the SPA "invalid and void" after that date would have no effect.  Second, because the relevant funds have already been distributed and the SPA is no longer valid, an unaccompanied order declaring CMS's approval of the SPA "invalid and void" would be of no consequence.  Third, because Defendant Maram has already disbursed the funds, no injunction may issue prohibiting distribution.  ***See Al-Amin v. Gramley, 926 F.2d 680, 685 (7th Cir. 1991) ("When there is no continuing violation of federal law, injunctive relief is not part of a federal court's remedial powers.")***. Accordingly, the "live" case or controversy requirement is not met here, and Plaintiff's requests are moot.

2.    *Standing*

The question of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." ***Warth v. Seldin*, 422 U.S. 490, 498 (1975)**.  With regard to the Article III "case or controversy" requirement, federal courts' jurisdiction to hear cases is limited to

"concrete, particularized, and actual or imminent rather than conjectural or hypothetical" injuries. ***Lujan v. Defenders of Wildlife***, **504 U.S. 555, at 560-61 (1992);** ***see also Gillespie v. City of Indianapolis***, **185 F.3d 693, 701 (7th Cir. 1999) (holding that a plaintiff must show a "distinct and palpable" injury in order to maintain a claim)**.  The "essence" of a standing inquiry is whether the parties have "'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.'" ***Gillespie***, **185 F.3d at 701 (quoting *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72 (1978))**.  In order to maintain a claim, therefore, a party must show "(1) an 'injury in fact;' (2) a causal connection between the injury and the conduct of which the party complains; and (3) that it is 'likely' a favorable decision will provide redress." ***Lujan***, **504 U.S. at 560-61**.

Here, Plaintiff does not assert that it has been directly harmed by the SPA in question.  In fact, it admits that the SPA has actually improved its economic position.  (Doc. 64, p. 9.)  Plaintiff's only allegation of injury revolves around the claim that it would be entitled to greater benefit under a different SPA — one that properly complied with the Medicaid Act.  (Doc. 64, p. 11.)

The Court finds that Plaintiff has not alleged a "distinct and palpable" injury sufficient to grant the Court jurisdiction to hear its case.  Though Plaintiff appears to be correct that Medicaid usage rates do indeed "factor out" of the SPA

equations, at least in some instances,[3] Plaintiff cannot obscure the fact that it suffers no "concrete, particularlized" injury as a result.  Even if another SPA — one that properly accounted for Medicaid usage rates — would place Plaintiff in an improved position, such an SPA exists purely in the hypothetical, a state that courts have steadfastly held does not give rise to standing.  ***Lujan*, 504 U.S. at 560; *see also Crosetto v. State Bar of Wisconsin*, 12 F.3d 1396 (7th Cir. 1993)**  ("[F]ederal courts lack the power to give advisory opinions in hypothetical cases.").   For these reasons, Plaintiff lacks standing to bring its claims.

### B.     Failure to State a Claim

Alternatively, the Court finds that Plaintiff has failed to state a claim on which relief can be granted.  When ruling on a motion to dismiss for failure to state a claim, a court assumes as true all well-pleaded facts, plus the reasonable inferences therefrom, and construes these in the light most favorable to plaintiff.  ***Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (citing *Wiemerslage Through Wiemerslage v. Maine Township High School Dist. 207*, 29 F.3d 1149, 1151 (7th Cir. 1994))**.  The question is whether, under those assumptions, the plaintiff has a right to legal relief.  ***Id.***

#### 1.     *Section 1983 Statutory Claims*

Section 1983 provides a party with a cause of action against an

---

[3] That is, Plaintiff appears to be correct that some SPA equations do not account for varying Medicaid utilization rates in different hospitals.  (*See* Doc. 39, pp. 5-8.)

individual acting under color of state law for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." **42 U.S.C. § 1983**. It does not, however, "provide an avenue for relief every time a state actor violates a federal law," ***Rancho Palos Verdes v. Abrams*, 125 S. Ct. 1453, 1458 (2005)**. Rather, "it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section." ***Gonzaga Univ. V. Doe*, 536 U.S. 273, 283 (2002)**. Such rights must be unambiguous, for "anything short of an unambiguously conferred right" fails to support an action under section 1983. ***Id***.

Here, Plaintiff argues that it should be allowed to bring a section 1983 action to enforce "provisions of the Medicaid Act, specifically § 1396 *et seq*." (Doc. 64, p. 3.) Plaintiff bases this argument largely on the Supreme Court's holding in ***Wilder v. Virginia Hospital Association*, 496 U.S. 498 (1990)**, where the Court found that a party could bring a section 1983 suit to enforce the Boren Amendment, a since-repealed provision of the Medicaid Act, **42 U.S.C. § 1396 et seq.** The Court there held (1) because the Boren Amendment (then codified at **42 U.S.C. § 1396(a)(13)(A)**) was intended to benefit health-care providers (such as that plaintiff), and (2) because the Amendment imposes a binding obligation on states, it created a federal right capable of enforcement via section 1983. ***Wilder*, 496 U.S. at 509-514**.

As noted above, ***Wilder*** considered a specific (and now-defunct) provision of the Medicaid Act, the Boran Amendment. Plaintiff asserts that although

10

"[t]he specific section addressed by **Wilder** was [the Boran Amendment,] the court couches its language in terms of § 1396 generally." (Doc. 64, p. 3.)  In other words, Plaintiff argues that **Wilder** creates a private, enforceable right under every provision of the Medicaid Act, not just the Boran Amendment.

This is not the case.  In **Wilder**, the Court examined the Boran Amendment to determine whether it created a federal right capable of enforcement, applying the two-part test alluded to above.  **Wilder, 496 U.S. at 509**.  It did not consider whether a private, enforceable right exists under the Medicaid Act generally. **Id. ("We must therefore determine whether the <u>Boren Amendment</u> creates a "federal right" that is enforceable under § 1983." (emphasis added))**.  Though Plaintiff is correct that the **Wilder** Court "did not foreclose enforcement of the Medicaid Act under § 1983," (Doc. 64, p. 4), neither did it create, via that section, a general right capable of being enforced.

Post-**Wilder**, as Plaintiff points out, the Seventh Circuit, in **Methodist Hospitals, Inc. v. Sullivan, 91 F.3d 1026 (7th Cir. 1996)** and based largely on **Wilder**, found that a private, enforceable right also exists under **42 U.S.C. 1396(a)(30)**. **See also American Society of Consultant Pharmacists v. Garner, 180 F. Supp. 2d 953 (N.D. Ill. 2001) (M.J. Schenkier)**.  This decision, however, was, like **Wilder**, limited to a specific provision within the Medicaid Act (**42 U.S.C. § 1396(a)(30)**), not the Medicaid Act generally.  **Methodist Hospitals, 91 F.3d at 1029-30**.  Plaintiff nonetheless argues that this case also stands for the proposition

that a general right exists under **42 U.S.C. 1396**.  (Doc. 64, p. 6.)

Such a reading does flow from *Methodist Hospitals*.  Despite Plaintiff's arguments, neither *Wilder* or *Methodist Hospitals* contains any language supporting the notion that a general right exists under the Medicaid Act.  For this reason, the Court finds that Counts I through IV of Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted.

2.     *Defendant Maram's Immunity*

Unless immunity has been waived, the Eleventh Amendment prohibits suit against a state, its officers, or state officials acting in their official capacities. *Edleman v. Jordan*, **415 U.S. 651, 662-63 (1974)**.  There is an exception, however, under the doctrine first laid out in *Ex Parte Young*, **209 U.S. 123 (1908)**.  Under that doctrine, a claim may be brought against a state actor in her official capacity provided the claim will "enjoin prospective action that would violate federal law." *Ameritech Corp. v. McCann*, **297. F.3d 582, 586 (7th Cir. 2002)**.  Importantly, the violation of federal law must be "ongoing" and the relief sought must be characterized as "prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, **535 U.S. 635, 645 (2002).**

Here, Plaintiff seeks "[a]n injunction preventing Barry S. Maram, in his official capacity as the Director of the Illinois Department of Public Aid, from making payments to providers pursuant to the SPA."  (Doc. 39, p. 12.)  Plaintiff seeks no other relief from Defendant Maram.  (Doc. 39.)  Plaintiff's problem, however, for *Ex*

***Parte Young*** purposes, is that these payments have already been made.  In fact, as noted above, the SPA in question expired on July 1, 2005.  For this reason, the relief Plaintiff seeks from Defendant Maram cannot properly be characterized as prospective.  Accordingly, the Court finds that Plaintiff's claims against Defendant Maram should be dismissed for failure to state a claim upon which relief can be granted.

### 3.    *Defendant CMS's Immunity*

As noted above, section 1983 provides a party with a cause of action against an individual acting under color of state law for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." **42 U.S.C. § 1983**. "An action brought pursuant to § 1983 cannot lie against federal officers acting under color of federal law." ***Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003)**.  There are two circumstances in which a defendant may be considered to have acted under color of state law.  "The first is when the state has cloaked the defendants in some degree of authority — normally through employment or some other agency relationship.  The second . . . is when the defendants have conspired or acted in concert with state officials."  ***Id.* (citations omitted)**.  To establish the second scenario, "the plaintiff must demonstrate that the state officials and the private party somehow reached an understanding to deny the plaintiffs their constitutional rights." ***Id.* (quoting *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir. 1985))**.

Here, Plaintiff brings its claims against CMS under section 1983. Defendant CMS is a federal actor. Plaintiff makes no suggestion that any provision under which it sues CMS waives its immunity. Nor does Plaintiff suggest that Illinois has, in any way, cloaked CMS with authority. Therefore, the issue of CMS's immunity is reduced to a question of whether CMS "conspired or acted in concert with state officials."

In this case, CMS approved, on behalf of the federal government, the SPA submitted by the IDPA. This action was taken under the authority delegated to it by the Secretary of the Department of Health and Human Services. **42 C.F.R. § 430.14-15**. There is no suggestion here that Illinois officials played any role in CMS's approval of the SPA, other than submission of the SPA for approval. Nor is there any suggestion that CMS "reached an understanding" with Illinois officials "to deny [Plaintiff of its] constitutional rights." Furthermore, CMS undertook its role in the approval process pursuant to federal, not state, regulations, ***id.***, and even if it acted jointly with state officials, it did so under color of federal, not state, law. ***See Case,*** **327 F.3d at 567 (holding that while federal officials cannot be sued under section 1983 for violations of federal law, they may be sued under section 1983 "if they conspire or act in concert with state officials to deprive a person of her civil rights under color of *state* law" (citations omitted) (emphasis added)).**

For these reasons, the Court finds that CMS may not be sued here under section 1983. As such, Plaintiff's claims against CMS should be dismissed for failure to state a claim upon which relief can be granted.

## IV.  <u>Conclusion</u>

For the reasons stated above, the Court **GRANTS** Defendants' Motions to Dismiss pursuant to **Federal Rule of Civil Procedure 12(b)(1)** (Docs. 47, 67, 73), and **DISMISSES without prejudice** Counts I through X of Plaintiff's Second Amended Complaint for lack of subject matter jurisdiction. (Doc. 39.)  Alternatively, the Court **GRANTS** Defendants' Motions to Dismiss pursuant to **Federal Rule of Civil Procedure 12(b)(6)** (Docs. 47, 67, 73), and **DISMISSES without prejudice** Counts I through X of Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted.

**IT IS SO ORDERED**.

Signed this 4th day of October, 2005.

<u>/s/            David RHerndon</u>
**United States District Judge**